# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE CO.** | |
| Plaintiff, | |
| v. | Civil Case No. SAG-18-1962 |
| **FEDERAL FIRE PROTECTION CORP.** | |
| Defendant, | |
| **VICTAULIC CO.,** *et al.* | |
| Third-Party Defendants, | |
| v. | |
| **ALLIED TUBE & CONDUIT CORP.,** *et al.* | |
| Fourth-Party Defendants | |

## MEMORANDUM OPINION

Third-Party Defendant/Fourth-Party Plaintiff Victaulic Company ("Victaulic") filed an Amended Fourth-Party Complaint against Fourth-Party Defendants Allied Tube and Conduit Corporation ("Allied") and Atkore International, Inc. ("Atkore"), asserting claims for contribution and equitable contribution (or indemnity) for claims arising out of allegedly defective steel sprinkler piping. ECF 69. Allied and Atkore have each filed Motions to Dismiss, ECF 76, 77 (collectively, the "Motions"). Victaulic opposed the Motions, ECF 78, 79, and Atkore and Allied filed Replies, ECF 82, 83. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motions will be granted, and the Amended Fourth-Party Complaint will be dismissed without prejudice.

I.   **FACTUAL BACKGROUND**

The facts below are taken in the light most favorable to Victaulic, the non-moving party. Allied, a company incorporated in Delaware with its headquarters in Illinois, manufactured steel sprinkler piping, coated with ABF II coating on the inside diameter. ECF 69, ¶¶ 4-5. Atkore is also incorporated in Delaware, and is headquartered at the same location in Illinois. *Id.* ¶¶ 4, 6.

Allied used to be known as Tyco International, Ltd.'s Electrical and Metal Products division ("TEMP"). *Id.* ¶ 9. TEMP conducted business in Maryland, including through its sale of Allied ABF II steel pipe. *Id.* In 2010, Tyco sold its TEMP division to Atkore, and Atkore assumed Tyco's assets and liabilities related to TEMP. *Id.* ¶ 10. Allied is now a subsidiary of Atkore. *See id.* ¶¶ 10-11. Atkore's website reads, "Our company was founded in 1959 in Harvey, Illinois, where our corporate headquarters is currently located. Our original business, known as Allied Tube & Conduit, developed an in-line galvanizing technique (Flo-Coa) in which zinc is applied as tube and pipe are formed." *Id.* ¶ 13.

The instant lawsuit concerns a leak of a fire sprinkler system in a condominium building in Baltimore, Maryland, in 2016, which caused hundreds of thousands of dollars in damage. ECF 1. Plaintiff Fireman's Fund Insurance Company ("Fireman's Fund") sued Federal Fire Protection Corporation ("Federal Fire"), the contractor responsible for installing the sprinkler system. *Id.* In turn, Federal Fire sued Victaulic, alleging that Victaulic manufactured the CPVC fire sprinkler piping that leaked. ECF 18. Upon inspecting the condominium building, Victaulic alleges "that the building's fire sprinkler system is a hybrid steel-CPVC fire sprinkler system consisting of CPVC fire sprinkler piping and Allied ABF II steel sprinkler pipe." ECF 69, ¶¶ 23-24. Victaulic further alleges that the coating on the Allied piping washes off, flows downstream into the CPVC piping, and "can cause environmental stress cracking of the CPVC fire sprinkler piping." *Id.* ¶ 25. Images of the piping from the condominium building suggest that Victaulic's CPVC piping

2

experienced environmental stress cracking. *Id.* ¶ 27. Victaulic thus filed its Amended Fourth-Party Complaint, seeking equitable contribution and contribution from Allied and Atkore for any liability it sustains for the incident. *Id.* ¶¶ 28-39.

## II. LEGAL STANDARD

Allied and Atkore seek dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). ECF 76, 77. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need

not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A*

*Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937, 132 S.Ct. 1960, 182 L.Ed.2d 772 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250).

### III. ANALYSIS

#### A. Atkore's Motion to Dismiss

Although Atkore contends, as its first argument, that this Court lacks personal jurisdiction, this Court is persuaded by Atkore's alternative argument that Victaulic has failed to state a claim against it under Maryland law.[1] Victaulic agrees with Atkore that "to state a claim for indemnity and contribution, it must be alleged that Atkore has original tort liability to the Plaintiff." ECF 79-

---

[1] Had Victaulic stated a viable claim against Atkore, this Court would have been inclined to grant Victaulic the limited jurisdictional discovery it sought, in order to ascertain whether Atkore has the requisite minimum contacts with Maryland. *See Mylan Labs., Inc. v. Akzo, N. V.*, 2 F.3d 56, 64 (4th Cir. 1993) ("[L]imited discovery may be warranted to explore jurisdictional facts in some cases"); *see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (noting this Court's discretion regarding the decision to permit jurisdictional discovery).

5

1 at 17 (citing *Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md. App. 698, 706 (2002)); *see also* ECF 77-1 at 13.

In this case, the sprinkler system at issue was installed in or about 2007, when the condominium building was constructed. ECF 1, ¶ 8. Atkore did not purchase Allied from Tyco until three years later, in 2010, ECF 69, ¶¶ 9-10, and Allied then became Atkore's corporate subsidiary, *id.* ¶ 11. Thus, it is clear that no actual conduct by Atkore could have caused Victaulic's alleged harm.

Victaulic points to its allegation that upon purchasing Allied, Atkore assumed "a portion of the liabilities for the Allied ABF II product." ECF 69, ¶ 10. But under Maryland law, a parent corporation is not generally liable for the wrongful acts of its subsidiary. "Maryland courts will pierce the corporate veil only where it is necessary to prevent fraud or enforce a paramount equity." *Ramlall v. MobilePro Corp.*, 202 Md. App. 20, 32 (2011) (declining to hold parent company liable for breach of contract by its subsidiary (citing *Bart Arconti & Sons v. Ames-Ennis, Inc.*, 275 Md. 295, 310 (1975))). Victaulic has made no allegations of fraud here, and has not plausibly established the existence of a "paramount equity" to justify piercing the corporate veil. *See Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 307 (1999) ("Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland courts." (citation and internal quotations omitted)).

Further, although Victaulic asserts that "Atkore is Allied's corporate successor-in-interest," ECF 69, ¶ 12, that assertion likewise finds no support in Maryland law maintaining the corporate veil between two independent corporations. Allied continues to exist as a separate corporate entity, and is actively defending itself in this action. Victaulic is patently aware of

Allied's continued viability and existence, since it named Allied as a fourth-party defendant. As an existing corporation, Allied plainly has no "successor," which is defined as "one who follows or comes into the place of another." *Successor*, BLACK'S LAW DICTIONARY (11th ed. 2019). While the two separate corporate entities maintain their headquarters at a single location, ECF 69, ¶¶ 4, 6, absent some factual allegations to support extending liability to Atkore as Allied's corporate parent, the claims against Atkore must be dismissed.

### B. Allied's Motion to Dismiss

The nature of Victaulic's claims for contribution and equitable contribution against Allied is unclear at best. Victaulic merely alleges that any liability imposed on it "was the result of and caused by the negligence, acts, omissions and/or other fault of Allied," ECF 69, ¶ 29, and that its liability "is either fully or in part caused by the acts, omissions or negligence, including under strict liability principles, of Allied," *id.* ¶ 32. The only specific factual allegation describing Allied's conduct is that "Allied knew and/or should have known that its ABF II steel sprinkler piping would be installed in hybrid fire sprinkler systems with CPVC fire sprinkler piping and that ABF II coating would wash off the pipe, and come in contact with the CPVC fire sprinkler piping and cause environmental stress cracking of the CPVC piping." *Id.* ¶ 26. That allegation does not plausibly establish any negligent conduct by Allied.

Under Maryland law, to establish a claim of negligence, a plaintiff must elucidate facts to establish four elements: "a duty owed to him . . . , a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank,* 307 Md. 527, 531 (1986). Here, Victaulic makes no allegation as to which entity purchased the Allied product, the circumstances of the purchase, or whether Allied had any reason to know that its ABF II product would be installed in a hybrid fire sprinkler system. Thus, on the

7

facts as alleged, Victaulic has not stated a plausible claim that Allied owed a duty to Federal Fire, Fireman's Fund, or even Victaulic itself. *See Heritage Harbour*, 143 Md. App. at 706 ("In order to successfully claim that appellees are liable to them for contribution and/or indemnity, appellants must have alleged that appellees have original tort liability to plaintiffs in the Underlying Suit."). Instead, the sole allegation lodged by Victaulic sounds like a claim for breach of implied warranty for fitness for a particular purpose, but Victaulic could not plausibly allege such a claim under Maryland law, absent facts suggesting that Victaulic itself purchased the piping from Allied, or that Allied knew the piping at issue was to be installed in a hybrid system with CPVC. *See* Md. Code Ann., Com. Law § 2-315 (West 2019); *Ford Motor Co. v. Gen. Accident Ins. Co.*, 365 Md. 321, 343 (2001) ("[A] party asserting a claim under § 2–315 must establish that the seller had reason to know, at the time of sale, that the purchaser had that particular use of the good in mind and that the purchaser was relying on the seller's expertise to select an appropriate product for that purpose. The need to establish specific knowledge on the part of the seller often may create a near requirement of direct dealing, if not actual privity . . . .").

Further, Victaulic does not assert defective manufacturing by Allied, which is the claim Federal Fire stated against Victaulic. In fact, Victaulic does not allege that Allied's ABF II product was defective at all, except when used in a hybrid system with CPVC sprinkler piping. Victaulic therefore has alleged no plausible claim for strict liability under Maryland law. *See Phipps v. Gen. Motors Corp.*, 278 Md. 337, 352-53 (1976) (limiting strict liability to situations where a seller sells a "defective and unreasonably dangerous product, which when placed on the market is impliedly represented as safe").

Thus, in this iteration of its Fourth-Party Complaint, Victaulic has not alleged a plausible set of facts on which Allied could be found liable for any particular, or identified, cause of action. Accordingly, Victaulic's claims against Allied must also be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Fourth-Party Defendants' Motions to Dismiss the Amended Fourth-Party Complaint, ECF 76 and 77, will be GRANTED, and the claims therein will be DISMISSED WITHOUT PREJUDICE. Victaulic may seek leave to amend its claims within thirty days of this Memorandum Opinion and Order, to the extent it can state a plausible claim for recovery. A separate Order follows.

Dated: February 28, 2020 /s/
Stephanie A. Gallagher
United States District Judge