**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FIREMAN'S FUND INSURANCE CO.          :
a/s/o THE COUNCIL OF UNIT OWNERS      :
OF 414 WATER STREET CONDOMINIUM       :
                                      :
                Plaintiff,          :
                                      :
    v.                              :
                                      :
FEDERAL FIRE PROTECTION CORP.         :   Case No. 1:18-cv-1962-SAG
                                      :
                Defendant,          :
                                      :
VICTAULIC COMPANY and VSC FIRE &      :
SECURITY, INC.                        :
                                      :
        Third-Party Defendants.  :
                                      :
    v.                              :
                                      :
ALLIED TUBE AND CONDUIT               :
CORPORATION and ATKORE                :
INTERATIONAL, INC.                    :
                                      :
        Fourth-Party Defendants. :
_____

**VICTAULIC COMPANY'S BRIEF IN OPPOSITION TO**
**ATKORE INTERNATIONAL, INC.'S MOTION TO DISMISS**
**SECOND AMENDED FOURTH-PARTY COMPLAINT**

## I.    INTRODUCTION

Atkore International, Inc.'s Motion to Dismiss the Second Amended Fourth-Party

Complaint ("SAFPC") raise two arguments unique to Victaulic's claims against Atkore.  Neither

justify dismissal of Victaulic's claims against Atkore.

First, Atkore contends that it cannot be liable as Allied's successor-in-interest.  Both

Maryland law and the allegations of the SAFPC belie that argument.  Maryland law provides that

a corporation, like Atkore, can be liable for its predecessor's wrongful acts when it is a "mere

continuation" of the predecessor.  The SAFPC alleges facts showing that Atkore is indeed a mere continuation of Allied.

Second, Atkore contends that this Court does not have personal jurisdiction over Atkore. The SAFPC alleges facts that establish both jurisdiction over Atkore under Rule 4(k) of the Federal Rules of Civil Procedure.

Atkore also raises the same issues that Allied raises in its motion to dismiss – namely, that: (1) Victaulic's claims are barred by the economic loss rule; (2) Victaulic cannot maintain an indemnity claim because Federal Fire's claims against Victaulic are based in part on allegations that Victaulic's piping was "defective"; and (3) Allied/Atkore cannot be liable for harm that ABF II causes to other products even though Allied knew that its ABF II steel piping was connected to CPVC piping, that the ABF II coating washed off and came in contact with CPVC piping and that the ABF II contained chemicals that caused environmental stress cracking of CPVC.  As explained in Victaulic's opposition to Allied's motion to dismiss, those arguments are devoid of merit and should be rejected.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint merely has to allege sufficient facts to prove the elements of a claim and need not forecast evidence. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim need only appear "plausible on its face." *Id.*  Under Maryland law, "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge

of such liability." *Pulte Home Corp.*, 942 A.2d 722, 731 (2008) (quoting Restatement of Restitution, § 96).

A Third-Party Defendant may seek relief "against a nonparty *who is or may be liable* to the third-party defendant for all or party of any claim against it." Fed. R. of Civ. P. 14 (2020) (emphasis added).  Rule 14(a) should be liberally construed to effectuate its intended purpose. *Baltimore & O.R. Co. v. Saunders*, 159 F.2d 481 (4th Cir. 1947).  Atkore correctly notes that to state a claim for indemnity and contribution, it must be alleged that Atkore has original tort liability to the Plaintiff.  *See Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md.App. 698, 810-11 (Md. Ct. App. 2002).

## iII.    ARGUMENT

### A.    *Victaulic's Second Amended Fourth-Party Complaint alleges Sufficient Facts to Establish a Plausible Claim that Atkore is Allied's Successor-in-Interest.*

Atkore argues that it cannot be liable as Allied's successor-in-interest under any claim because (1) Victaulic has not pled facts sufficient to allow the court to "pierce the corporate veil," and (2) Allied does not have a "successor" because it is an existing corporation. *See* Atkore Memorandum at 9-10.  Both arguments are unavailing.

While  successor corporations do not typically acquire its predecessor's liabilities, the FourthCircuit has recognized four exceptions to the general rule where "(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a 'mere continuation' of the predecessor; or (4) the transaction is fraudulent." *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013) (quoting *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992)).  Maryland courts have adopted the same

rule. See *Ramlall v. MobilPro Corp*., 202 Md.App. 20 (2011), (citing *Baltimore Luggage Co. v. Holtzman*, 80 Md.App. 282, 290 (1989)).

A court will find that a corporation is a perpetuation of another if there is a continuation of directors and management, shareholders, and occasionally inadequate consideration. See *Nissen Corp. v. Miller*, 323 Md. 613, 620 (1991). Courts will place emphasis on whether there is a continuation of the corporate entity rather than that of the business operation.

In determining whether a successor corporation is a mere continuation of its predecessor, courts will consider certain indicia such as:

> Common officers, directors, and stakeholders; and only one corporation in existence after the completion of the sale of assets. While the two foregoing factors are traditionally indications of a continuing corporation, neither is essential.  Other factors such as continuation of the seller's business practices and policies and the sufficiency of consideration running to the seller corporation in light of the assets being sold may also be considered.  To find the continuity exists merely because there was common management and ownership without considering other factors is to disregard the separate entities of the corporation without the necessary considerations that justify such an action.

*Baltimore Luggage*, 80 Md.App. 282 (1989), (citing 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7122 (rev. perm. ed. 1983)).

As Victaulic alleged in its Second Amended Fourth-Party Complaint, Atkore is a mere continuation of Allied. *See* SAFPC at ¶ 12.  Victaulic further alleged that Atkore's website (www.atkore.com) states: "With 4,000 employees and 66 manufacturing and distribution facilities worldwide, we meet our customers' needs by providing unmatched quality, delivery and value across a robust product line that includes steel, PVC and aluminum conduit, armored cable and flexible conduits, metal framing, wire baskets, cable trays and other complementary products including fittings and mechanical pipe."  *See* SAFPC at ¶ 7.  Allied was formerly a part of Tyco

and known as the Tyco International Ltd. Electrical and Metal Products ("TEMP") division. *Id.* at ¶ 9. At all times relevant to this lawsuit, TEMP conducted business in the state of Maryland through, among other things, its sale of fire sprinkler products, including Allied ABF II steel pipe. *Id.* When Atkore purchased Tyco's TEMP division, it continued to sell Allied pipe (and continues to advertise that it sells Allied pipe). *Id.* As stated on Atkore's website, it used to be known as Allied Tube & Conduit and takes credit for developing "an in-line galvanizing technique (Flo-Coat) in which zinc is applied as tube and pipe are formed." (http://www.atkore.com/about-atkore/history/). *Id.* at ¶ 14.

Victaulic has further alleged that in its SEC filings, Atkore admits that:

> Certain of the acquisition agreements by which we have acquired companies require the former owners to indemnify us against certain liabilities related to the operation of the company before we acquired it. In most of these agreements, however, the liability of the former owners is limited and former owners may be unable to meet their indemnification responsibilities. We cannot assure you that these indemnification provisions will protect us fully or at all, and as a result we may face unexpected liabilities that could adversely affect our financial position, results of operations or cash flows.

*Id.* at ¶ 15. Atkore has admitted that "certain of [its] subsidiaries have been named as defendants in product liability law suits claiming that [its] ABF II anti-microbial coated sprinkler pipe allegedly caused environmental stress cracking in chlorinated PVC pipe." *Id.* at ¶ 16.

Therefore, every indication from the information available to Victaulic is that Atkore is a mere continuation of Allied. It continues to sell the same products using the same methods and advertises itself as Allied. For this reason, Atkore has original tort liability to the Plaintiff due to its introduction of harmful chemicals into pipe manufactured by Victaulic, which caused

subsequent cracking and leaking.  Victaulic further has the right to seek damages under contribution and indemnity as against Atkore because it was a mere continuation of Allied.[2]

Atkore's second argument that Allied is still an operating corporation and thus, Atkore cannot be Allied's successor in interest raises a factual dispute that can only be resolved on a motion for summary judgment after discovery.  Allied's invitation to this Court to make a factual determination at the motion to dismiss stage is improper.  The allegations of the SAFPC show that Allied may be operating in name only and that Atkore operates partly under Allied's name.  The fact that Atkore does not agree with these allegations is immaterial at this stage of the lawsuit.  The proper procedure is for Atkore to file an answer to these allegations and for the parties to take discovery into the operations of Allied and Atkore.

Accordingly, the SAFPC adequately pleads  factual allegations that Atkore is a mere continuation and successor-in-interest to Allied.  Atkore's motion, therefore, should be denied.

### B. Victaulic Has Made a Prima Facie Showing that this Court has Personal Jurisdiction over Atkore Under Rule 4(k) of the Federal Rules of Civil Procedure

To establish personal jurisdiction, a plaintiff must allege that a statute or rules authorizes service of the individual or entity in the District of Maryland and that service comports with the Due Process Clause of the Fourteenth Amendment. *Mylan Lab.*, Inc. v. Azko, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  To prove that service comports with due process, a plaintiff must show that the defendant has "minimum contacts" with the State. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).   Under Maryland's long-arm statute (Md. Code Ann., Md. Cts. & Jud. Proc., §

---

[2] If this Court finds that Victaulic has not sufficiently pled that Atkore is a mere continuation of Allied, Victaulic requests that this Court permit limited discovery to obtain the required information.

6-103(b) (2020)) permits courts to assert personal jurisdiction over parties, who (1) directly conduct business in the State, or (2) conduct activities in the State through an agent. *Id.* at 61.

The SAFPC includes factual allegations supporting its claim that this Court has jurisdiction over Atkore pursuant to a relevant statute, namely Federal Rule of Civil Procedure 4(k).  Under Rule 4(k), a plaintiff can establish personal jurisdiction in the following three ways:

> Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
> (A)  who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> (B)  *who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued;* or
>
> (C)  when authorized by federal statute.

Fed. R. Civ. P., § 4(k)(1) (2019) (emphasis added).

It is well-established that a court has personal jurisdiction over a third-party defendant joined under Rule 14 or Rule 19 if: (1) the third-party defendant was served within the 100-mile "bulge area" surrounding the federal courthouse where the action was filed; and (2) the third-party defendant has "sufficient minimum contacts with the bulge area."  *Fitzgerald v. Wal-Mart Stores East, LP*, 296 F.R.D. 392, 394-95 (D. Md. 2013) (ruling that Court had personal jurisdiction over a third-party defendant where it was served within 100 miles of the Maryland courthouse and third-party defendant "had the requisite minimum contacts within the bulge area to alleviate any due process concerns").  Under Rule 4(k), the question of whether a forum state may exercise jurisdiction over the party in the same circumstances is immaterial. *Id.* at 394, (citing *Hollerbach & Andrews Equip. Co., Inc. v. Concrete Pumping, Inc*., 1995 U.S. Dist.

LEXIS 14990, 1995 WL 604706, at *2 (D. Md. Sept. 29, 1995) (citing *Quinones v. Penn. Gen. Ins. Co.*, 804 F.2d 1167, 1176 (10th Cir. 1986))).

Other jurisdictions have similarly adopted this test for personal jurisdiction over Rule 14 defendants like Atkore.  *See Tatar v. Levi*, No. 08-4422, 2010 WL 3740610, at *4 (D.N.J. Sept. 20, 2010); *Eiriksson v. Concrete Systems, Inc.*, No. 05-cv00235, 2006 WL 2792402, at *3-4 (D.N.H. Sept. 28, 2006); *Gamble v. Lyons Precast Erectors, Inc.*, 825 F. Supp. 92, 94 (E.D. Pa. 1993); *Salamon v. Motor Vessel Poling Bros.*, No. 11, Inc., No. 87 CV 3369, 1989 WL 65517, at *1 (E.D.N.Y. June 6, 1989); *Sprow v. Hartford Ins. Co.*, 594 F.2d 412, 417 (5th Cir. 1979); *Coleman v. American Export Isbrandtsen Lines, Inc.*, 405 F.2d 250, 252 (2d Cir. 1968).  "The intent of Congress in enacting the bulge rule . . . was 'to allow complicated controversies to be ended by a single lawsuit if all the necessary third parties could be found within 100 miles of the courthouse.'" *Gamble*, 825 F. Supp. at 94 (quoting *Coleman*, 405 F.2d at 252).

Here, the allegations in the Fourth Party Complaint unequivocally establish personal jurisdiction under Rule 4(k)(1)(B) and the *Fitzgerald* requirements.

***First***, pursuant to Rule 4(k)(1)(B), Atkore, a Rule 14 third-party defendant, was served within the 100-mile "bulge area" surrounding the federal courthouse where this action was filed. Victaulic joined Atkore to this lawsuit as a Fourth-Party Defendant pursuant to Federal Rule of Civil Procedure 14(a)(5), which allows a third-party defendant to implead a party who is or may be liable to the third-party defendant for all or part of the claim. Victaulic previously filed a Motion for Leave to File-Fourth Party Complaint against both Allied and Atkore on the grounds that they are "necessary parties to this action because they are potential tortfeasors in addition to all previously identified Defendants and Third-Party Defendants." *See* Victaulic's Motion for Leave to File Fourth-Party Complaint at 4, which is attached hereto as Exhibit A (exhibits

omitted).  The Court subsequently granted Victaulic's motion on August 19, 2019 effectively

joining Atkore as a party. *See* Court's Order attached as Exhibit B.

The Court issued a Summons to Atkore's resident agent, the Corporate Trust Company

located at 1209 Orange Street, Wilmington, Delaware 19801. *See* copy of Summons attached

hereto as Exhibit C. The Summons was received by the resident agent at said address on October

28, 2019 as evidenced by the attached certified mail return receipt attached hereto as Exhibit D.

According to Google Maps, the distance between the United States District Court for the District

of Maryland located at 101 West Lombard Street, Baltimore, Maryland 21201 and The

Corporate Trust Company located at 1209 Orange Street, Wilmington, Delaware 19801 is 74.3

miles – well within the 100-mile "bulge." *See* Google Maps Directions attached as Exhibit E.

Thus, Victaulic has established that Atkore is a properly implead Fourth-Party Defendant,

which was served within a 100-mile radius of the physical location of this Honorable Court.

***Second***, pursuant to *Fitzgerald*, Victaulic's SAFPC establishes that Atkore has "sufficient

minimum contacts with the bulge area."  In analyzing the question of minimum contacts, it is

well established that the third-party defendant's contacts with the forum state (or in this situation

with the bulge area) are sufficient enough that the suit would not "offend 'traditional notions of

fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316.  When analyzing whether

minimal contacts occur, courts will first look to see whether the plaintiff asserts "general

personal jurisdiction" or "specific personal jurisdiction."

If a plaintiff is asserting general personal jurisdiction (authority of the court to hear any

cause of action involving a defendant), it must show that a defendant has "continuous and

systematic" contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*,

466 U.S. 408 (1984).  The minimal contact requirement is met when a party "purposefully avails

himself of the privilege of conducting business under the laws of the forum state." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).  .  In analyzing the sufficiency of a party's contacts, courts will look at the "foreseeability…that the defendant's conduct and connections with the forum state are such that he should reasonably anticipate being hauled into court there." *Burger King Corp., v. Rudzewicz*, 471 U.S. 462 (1985) (quotation omitted).

In deciding whether a court has specific jurisdiction (defendant's contacts with the forum state forms the basis for the suit), the court will consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state, (2) whether the plaintiff's claims arise out of those activities directed at the state, and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*. 334 F.3d 390 (4th Cir. 2003).

1.   <u>Victaulic has Established General Personal Jurisdiction</u>

Certainly, traditional notions of fair play and substantial justice are not offended when a third-party defendant has its state of incorporation within the bulge area.  In *Fitzgerald*,  the Court held that sufficient minimum contacts were established where the Third Party Defendant was incorporated within the bulge area, its resident agent was located within the bulge area, and the underlying incident occurred and services were contracted to be provided in the bulge area. *Fitzgerald*, 296 F.R.D at 394-95.

As alleged in Victaulic's Second Amended Fourth-Party Complaint, Atkore is incorporated in the State of Delaware, which is within the 100-mile bulge area.  *See* SAFPC at ¶ 4.  Its resident agent, the Corporate Trust Company is located at 1209 Orange Street, Wilmington, Delaware 19801, which is within the bulge area. *See* Summons attached as Ex. D.

The underlying incident in the case before the court occurred at the subject property located at 414 Water Street, Baltimore, Maryland 21202 and the aforementioned pipe sold by Allied was used at the subject property, which is well within the bulge area. These contacts alone establish sufficient minimum contacts pursuant to the requirement and Atkore's motion should be denied accordingly.

Moreover, the SAFPC alleges that Atkore has sufficient contacts with Maryland to establish personal jurisdiction. It alleges that Allied is now a subsidiary of Atkore and, in effect, is an agent of Atkore. *See* SAFPC at ¶ 12. It is further alleged that Atkore regularly conducts business in the State of Maryland by knowingly selling its products in the State and by maintaining sales representatives within the State to sell its products. *Id.* at ¶¶ 8 & 17.

In Atkore's 10-K, which was specifically cited by Atkore in its Motion to Dismiss at page 13, Atkore represents that its products include galvanized and non-galvanized mechanical metal tubes. *See* Ex. G. at 4. It further states that "[its] products are primarily marketed by commissioned agents and sold directly to electrical and industrial distributors who resell [its] products under recognized brand names**, including Allied Tube & Conduit**…that are used regionally or in niche markets." *Id.* at 4 (emphasis added). It explains that Atkore "primarily sell[s] and distribute[s] [its] products through electrical, industrial and specialty distributors and OEMs…" and further that it has "over 13,000 electrical-distributor branches in the United States." *Id.* Atkore represents that *it* delivers its products from *its* facility to either dedicated distribution centers or to the customer directly." *Id.* at 5.

The representations made in the Atkore 10-K support Victaulic's factual assertions presented in its SAFPC, specifically that Atkore regularly conducts business in the State of Maryland by knowingly manufacturing products for sale within the State and by maintaining sales

representatives within the state  to assist Maryland-based customers with the purchase its products.[3]

It also alleges that Atkore was formerly party of Tyco and known as Tyco International Ltd. Electrical and Metal Products ("TEMP") division, which regularly conducted business in the state of Maryland through sale of its fire sprinkler products. *Id.* at ¶ 10.  Victaulic specifically alleged that Atkore is subject to the personal jurisdiction of the State of Maryland because it regularly conducts business in the State of Maryland and because its predecessor committed the unlawful acts alleged in the State of Maryland. *Id.* at ¶ 18.

The requirements of the *Fitzgerald* test are met to establish general personal jurisdiction, and thus, Atkore's assertion that this Court lacks personal jurisdiction over it is without merit.

        2.    <u>The SAFPC's Factual Allegations Establish Specific Personal Jurisdiction</u>

Specific personal jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." *CFA Institute*, 551 F.3d at 292 n.15 (citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).  The SAFPC alleges facts showing that Atkore has purposefully availed itself of the privilege of conducting activities in the State of Maryland because, as previously set forth herein, it has established minimum contacts in the State, making it subject to this Court's jurisdiction.  as it would be reasonable to presume that it would be brought into a Maryland claim such as the one before the Court. Atkore markets and sells its products, including those under the label of Allied Tube & Conduit throughout the United States, including in the State of Maryland.  Further, Victaulic's claims arise out of Atkore's

---

[3] Discovery should also be allowed to determine Atkore's sales of its products to assist in determining the extent ot Atkore's contacts in the State of Maryland since it so far has failed to provide any evidence thereof.

predecessor's activities in the State.  Atkore's predecessor, TEMP (through Allied) sold the subject piping that was used at the subject project in Maryland.  The underlying claim arises as a result of that activity, which was directed at the State.  The SAFPC alleges that the Allied ABF II coating on its steel pipe is an incompatible environmental stress cracking agent that was introduced into the fire sprinkler system. *See* SAFPC at ¶ 40.

The Supreme Court had ruled that "even a single act can support jurisdiction" as long as it "creates a 'substantial connection' with the forum." *Burger King*, 471 U.S at 475 n. 18.   The Court reasoned that even if a defendant had not consented to suit in the subject forum, it receives "fair warning" where it has "purposefully directed" its activities at the residents of the forum and the basis for the action are alleged injuries arising out of or related to those activities. *Id.* at 472 (citations and quotations omitted).  The Fourth Circuit has ruled that the following factors should be considered in determining whether a defendant has sufficient contacts with the forum state:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers,* 561 F.3d at 278.

The Atkore 10-K shows that Atkore currently makes considerable efforts to reach into the State of Maryland, including by marketing its products through commissioned agents and sells directly to electrical and industrial distributors who resell our products under recognized brand names, including Allied.  *See* Ex. G. at 4.  In addition, Atkore's predecessor, TEMP (or Allied) would have engaged in at least one act by selling the subject piping to be used at the subject project in Maryland.  This makes Atkore's connection a substantial one because it would make it foreseeable to TEMP (or Allied) that it would have to have defend itself in the forum state in a case such as the one before the Court.  This supports Victaulic's allegations in its Amended Fourth-Party Complaint that at all times relevant to this lawsuit, TEMP (and Allied) conducted business in the state of Maryland by selling fire sprinkler products, including Allied ABF II steel pipe.[4]

For the aforementioned reasons, the SAFPC alleges facts establishing a *prima facie* showing of personal jurisdiction.

C.     **The Remaining Issues Atkore Raises Similarly Do Not Support Dismissal of the SAFPC.**

Atkore also asserts the same issues that Allied raises in its motion to dismiss – namely, that:

(1)     Victaulic's claims are barred by the economic loss rule;

(2)     Victaulic cannot maintain an indemnity claim because Federal Fire's claims against Victaulic are based in part on allegations that Victaulic's piping was "defective"; and

(3)     Allied/Atkore cannot be liable for harm that ABF II causes to other products even though Allied knew that its ABF II steel piping was connected to CPVC piping,

---

[4] If the Court has any concerns with Atkore's contacts, Victaulic requests that the Court allow parties to engage in limited discovery to obtain the information necessary to sufficiently analyze Atkore's contacts.

that the ABF II coating washed off and came in contact with CPVC piping and that the ABF II contained chemicals that caused environmental stress cracking of CPVC.

Victaulic's opposition to Allied's motion to dismiss explains that those arguments lack merit and should be rejected.  Victaulic incorporates herein by reference its Brief in Opposition to Allied Tube and Conduit Corporation's Motion to Dismiss Victaulic Company's Second Amended Fourth-Party Complaint.  In particular, neither Atkore nor Allied's motions to dismiss offer any response to the 81 paragraphs of the SAFPC detailing Allied's wrongful conduct in selling a pipe coated with an ABF II coating that it knew would wash off and cause environmental stress cracking of adjoining CPVC piping.  Atkore's motion to dismiss should be denied accordingly.

## CONCLUSION

For the foregoing reasons, Victaulic respectfully requests that the Court deny Atkore's Motion to Dismiss Victaulic's Second Amended Fourth-Party Complaint.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

  */s/ Daniel J. O'Hara*
Megan T. Mantzavinos, Bar No. 16416
Daniel J. O'Hara, Bar No. 28928
600 Baltimore Avenue, Suite 305
Towson, MD 21204
(410) 339-6880

Gregory J. Wartman, Esquire
Law Office of Gregory J. Wartman
3155 Burn Brae Dr.
Dresher, PA 19025
(267) 265-7648
gregoryjwartman@gmail.com
*(Admitted pro hac vice)*

{MD207404.1}                                        3

*Attorneys for Third-Party Defendant and*
*Fourth-Party Plaintiff Victaulic Co.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 9th day of July, a copy of Third-Party Defendant/Fourth-Party Plaintiff Victaulic Company's Brief in Opposition to Fourth-Party Defendant Atkore International, Inc's Motion to Dismiss Second Amended Fourth-Party Complaint and this Certificate of Service was electronically transmitted to all parties of record.


*/s/ Daniel J. O'Hara*
Daniel J. O'Hara