UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FIREMAN'S FUND INSURANCE CO.
a/s/o THE COUNCIL OF UNIT OWNERS         :
OF 414 WATER STREET CONDOMINIUM          :
                                         :
                 Plaintiff,              :
                                         :      Case No.: 1:18-cv-1962-CCB
        v.                               :
                                         :
FEDERAL FIRE PROTECTION CORP.            :
                                         :
                 Defendant,              :
                                         :
VICTAULIC COMPANY and VSC FIRE &         :
SECURITY, INC.                           :
                                         :
              Third-Party Defendants.    :
                                         :
        v.                               :
                                         :
ALLIED TUBE AND CONDUIT                  :
CORPORATION                              :
                                         :
                                         :
ATKORE INTERNATIONAL, INC.               :
                                         :
              Fourth-Party Defendants.   :
_____  :

**BRIEF IN OPPOSITION TO ALLIED TUBE AND CONDUIT CORPORATION'S
MOTION TO DISMISS VICTAULIC COMPANY'S
<u>SECOND AMENDED FOURTH-PARTY COMPLAINT</u>**

## I.      <u>INTRODUCTION</u>

The 81 paragraphs of the Second Amended Fourth Party Complaint ("SAFPC") allege in

detail facts establishing Allied Tube and Conduit Corporation's liability to Plaintiff in both

negligence and strict liability (for defective design and failure to warn) for the harm caused by its

ABF II coating.  In doing so, the SAFPC addresses the prior concern this Court raised with

Victaulic's pleading against Allied and adequately states contribution and indemnity claims.

Allied ignores the SAFPC's detailed allegations and refiles basically the same motion to dismiss that it filed in response to Victaulic's prior pleading.  Allied makes three equally unavailing arguments:

***Economic Loss.***  Allied contends that Victaulic's claims are barred by the economic loss rule.  While this ultimately may be a viable defense for both Allied and Victaulic, discovery is necessary to determine if the damages Plaintiff seeks in this lawsuit include only damage to the building as delivered – and not other property.

***Focus on Federal Fire's Allegations.***  Allied contends that it cannot be liable for indemnity because Federal Fire's Third Party Complaint alleges in part that Victaulic's pipe was "defective" and does not mention ABF II.  This argument ignores the fact that under Maryland law, Allied can be liable for indemnity if it bears original liability to Plaintiff, which the SAFPC alleges.  Allied's argument also ignores the extremely broad language of Federal Fire's third party complaint, which is not limited to allegations that Victaulic's pipe was defective, and incorporates Plaintiff's allegations that an incompatible chemical attacked the CPVC pipe.

***Allied's Defect Argument.***  Allied contends that it cannot be sued for the harm its ABF II coating causes to adjoining CPVC fire sprinkler pipe in hybrid sprinkler systems even though it knew that its ABF II steel piping was connected to CPVC piping, that the ABF II coating washed off and came in contact with CPVC piping and that ABF II contained chemicals that caused environmental stress cracking.  This argument is not supported by any Maryland case law and is completely disingenuous as Allied has been sued dozens of times over the last 12 years for this exact issue, and courts across the country have recognized that identical allegations related to the ABF II coating establish a basis for liability.

Allied's motion is unfounded and should be denied.

## II.    FACTUAL BACKGROUND

### *Fire Sprinkler System at 414 Water Street.*

In or about 2007, a 312 unit high rise condominium building, the 414 Water Street Condominium, was constructed at 414 Water Street in Baltimore, Maryland.  *See* Complaint, a copy of which is attached as Exhibit "A," at ¶¶ 5-6 & 8.  Federal Fire Protection Corporation designed and installed a mixed steel-CPVC fire sprinkler system comprised of CPVC fire sprinkler piping connected to Allied ABF II-coated steel sprinkler piping.  Id. at ¶¶ 7 & 10; SAFPC, a copy of which is attached as Exhibit "B," at ¶ 27.  The ABF II coating is a black, anti-microbial coating on the inside of the steel piping that was designed to prevent microbial growth. *Id.* at ¶ 27.

### *Allied's Knowledge of ABF II, How It Was Used and Its Dangers.*

At all relevant times, Allied was a manufacturer of steel fire sprinkler products and a division of Tyco Electrical and Metal Products, which manufactured a range of fire sprinkler products, including CPVC fire sprinkler piping.  *Id.* at ¶ 28.  As a result, Allied knew that installation contractors, such as Federal Fire (the installation contractor at 414 Water Street), were connecting its ABF II coated steel piping to CPVC fire sprinkler piping in mixed steel-CPVC fire sprinkler systems, like the one in 414 Water Street.  *Id.* at ¶ 29.

At all relevant times, Allied knew that CPVC fire sprinkler piping suffered environmental stress cracking ("ESC") when exposed to incompatible chemicals.  *Id.* at ¶ 30.  ABF II contained chemicals that, at the time Allied began selling its ABF II coated steel pipes in 2004, were well known to cause ESC.  *Id.* at ¶ 31.  Neither the anti-microbial coating that Allied used before ABF II – ABF I – nor anti-microbial coatings used by other steel pipe manufacturers contained chemicals that caused ESC of CPVC piping.  *Id.* at ¶ 32.

The chemical composition of ABF II was known only to Allied.  At the time the fire sprinkler system was installed at 414 Water Street, neither Victaulic nor the Plaintiff's insured knew that Allied's ABF II caused ESC of CPVC piping or contained chemicals that caused ESC.  *Id.* at ¶ 33.  At all relevant times, Allied knew that the ABF II coating washed off its steel piping, came in contact with adjoining CPVC fire sprinkler piping and knew or should have known caused environmental stress cracking of the CPVC piping.  *Id.* at ¶ 34.  Allied did not warn the fire sprinkler industry of this danger.  *Id.* at ¶ 56.

The ABF II coating from the Allied ABF II coated steel piping at 414 Water Street washed off the steel piping and came in contact with the incident CPVC fire sprinkler pipe at issue in this lawsuit. *Id.* at ¶ 35.  The fracture surface of the CPVC fire sprinkler pipe was darkened, which is consistent with the type of chemical reaction that takes place when ABF II causes environmental stress cracking.  *Id.*

Allied failed to test the compatibility of its ABF II coating with CPVC fire sprinkler piping before introducing its Allied ABF II steel piping to the marketplace.  *Id.* at ¶ 36.  Had Allied conducted compatibility testing before it began selling ABF II coated steel piping, that testing would have shown that the ABF II coating is not compatible with and causes ESC of CPVC piping.  *Id.*  At all relevant times, Allied failed to disclose to the public, including but not limited to Plaintiff (and Plaintiff's insured) and Victaulic, the chemical ingredients in its ABF II coating.  *Id.* at ¶ 37.

In or around April 2007, Allied provided Lubrizol Corporation, a manufacturer of CPVC resin, with a list of the proprietary ingredients in ABF II.  *Id.* at ¶ 38.  After reviewing the list of ABF II ingredients, Lubrizol immediately notified Allied that ABF II was "very incompatible with CPVC."  *Id.*  In April 2007, Lubrizol conducted testing on the compatibility of ABF II and CPVC pipes, and by May 3, 2007, concluded that the testing showed ABF II was incompatible with and

caused environmental stress cracking of CPVC.  *Id.* at ¶ 40.  Lubrizol immediately told Allied that its testing showed ABF II to be incompatible with CPVC piping.  *Id.* at ¶ 41.  Despite this actual knowledge, Allied did not warn of the dangers associated with its ABF II coating and, instead, continued to manufacture and sell ABF II coated steel piping for use in mixed steel-CPVC fire sprinkler systems.  *Id.* at ¶ 42.

Lubrizol conducted additional compatibility testing on ABF II and CPVC in August 2007. That testing confirmed that ABF II was incompatible and caused environmental stress cracking of CPVC piping.  *Id.* at ¶ 43.  Although Lubrizol immediately notified Allied of the August 2007 testing confirming that ABF II was incompatible with and caused environmental stress cracking of CPVC piping.  Allied again hid these test results from the public.  *Id.* at ¶¶ 44-45.

### *Allied Has Been Repeatedly Sued For Damage ABF II Caused to CPVC Pipes.*

Allied's ABF II coating has caused CPVC fire sprinkler pipes installed in hybrid mixed steel-CPVC fire sprinkler systems in other buildings across the country to suffer environmental stress cracking and leaking.  *Id.* at ¶ 46.  Allied has been sued and continues to be sued by condominium associations, building owners and insurers across the country for negligence and strict liability arising from the harmful effects that the ABF II steel piping caused to CPVC piping – the exact same allegations Victaulic is asserting here.  *Id.* at ¶ 47.

### *Incident Leak*

On or about September 5, 2016, a CPVC fire sprinkler pipe located in a 23rd floor utility room cracked and leaked.  Exhibit A at ¶ 11.  The Complaint alleges that the CPVC pipe leak "released copious amounts of water which flooded the 23rd Floor along with numerous sections of the Subject Premises below the 23rd Floor including stairwells, common areas and individual condominium units."  *Id.* at ¶ 12.  Plaintiff further alleges that the CPVC leak "resulted in

significant water damage to the Subject Premises." *Id.* at ¶ 14. The condominium association

for the 414 Water Street Condominium submitted a claim to its insurance company – Plaintiff,

Fireman's Fund Insurance Company – "for reimbursement and indemnity for its losses" caused

by the leak. *Id.* at ¶ 15.

Plaintiff alleges that a "post-loss inspection" showed that the leak occurred because the

CPVC pipe was attacked by "contaminants introduced at the time of the fire sprinkler system's

installation [which] caused the deterioration and ultimate failure of the CPVC pipe." *Id.* at ¶ 13.

The post-loss report states:

> Inspection of the failed CPVC pipe shows multiple cracks on the
> inside walls of the pipe in addition to the main crack. Such
> cracking phenomena requires multiple initiation sites and is most
> likely caused by an environmental stress cracking agent which is
> incompatible with the CPVC.

*See* MDW Solutions LLC Report attached as Exhibit C. The report further states that there is "a

black substance coating part of the pipe interior" and that "black substance also appears to have

penetrated into the cracks." *Id.* at 2. The report recognizes that "[t]he black substance coating

the interior of the pipe" may be a stress cracking agent for CPVC. *Id.* at 4.

As a result, Plaintiff asserted claims against the fire sprinkler installer, Federal Fire

Protection Corporation ("Federal Fire"), for negligence, breach of implied warranty of good and

workmanlike service and construction due to its introduction of the contaminant into the fire

sprinkler system. *See* Exhibit A at Count I and II. Federal Fire filed a Third-Party Complaint

against Defendant, Victaulic, which allegedly manufactured the aforementioned CPVC pipe, and

VSC Fire & Security, Inc., the company that maintained the fire sprinkler system after

construction. *See* Exhibit D. Federal Fire asserted purported equitable contribution and

contribution claims against Victaulic. Federal Fire alleged, among other things, that if found

liable to Plaintiff, "such liability was the result of and caused by the negligence, acts, or omissions and/or other fault of Victaulic Company, including strict liability based upon its provision of faulty and/or defective pipe to Federal Fire . . ." *Id.* at ¶ 26.

Victaulic filed a Fourth-Party Complaint against Allied and its parent company, Atkore International, Inc. ("Atkore") after Victaulic's polymer consultant inspected the building and portions of the fire sprinkler that were made available.  The inspection showed that the fire sprinkler system contained CPVC piping connected to Allied steel sprinkler piping coated with ABF II on the interior.  *See* Exhibit B at ¶¶ 26-27.[1]  Atkore and Allied moved to dismiss that pleading, and the Court subsequently granted the motion allowing Victaulic to seek leave to amend its pleading.   Pursuant to that Order, Victaulic sought and was granted leave to file the Second Amended Fourth Party Complaint.

### III.   LEGAL STANDARD

The Court of Appeals for the Fourth Circuit has ruled, "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court has also ruled that "[i]n considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Id.*  Dismissal is inappropriate where, as here, Victaulic has alleged facts to establish indemnity and contribution claims against Allied and discovery is needed to determine whether the economic loss rule applies.

---

[1] Victaulic filed an amended Fourth Party Complaint on December 5. 2019.

## IV.   ARGUMENT

Allied's motion to dismiss the SAFPC blatantly ignores the extensive allegations of Allied's negligence and failure to warn regarding the incompatibility of its ABF II coating with CPVC piping in mixed steel-CPVC fire sprinkler systems.  Those allegations establish what is necessary at the pleading stage to state indemnity and contribution claims – that Allied has original liability to Plaintiff.  *See Heritage Harbour v. John J. Reynolds*, 143 Md. App. 698 (2001).  Allied tries to direct this Court's attention away from these overwhelming allegations by raising three arguments that have no merit and do not support dismissal of the SAFPC.

### A.   The Second Amended Fourth Party Complaint Establishes a Claim of Negligence as Against Allied.

To establish a claim for negligence, a party must prove the following: "a duty owed to him…, a breach of that duty, a legally cognizable causal relationship between the breach of the duty and the harm suffered, and damages. *Jacques v. First Nat'l Bank*, 307 Md. 527, 531 (1986). The allegations of the Second Amended Fourth Party Complaint, if true, would overwhelmingly demonstrate that Plaintiff has original negligence claims against Allied.

#### 1.   *Allied Owed Plaintiff a Duty of Care and Duty to Warn.*

The SAFPC alleges that Allied owed Plaintiff (and its insured): (1) a duty of care to ensure that the ABF II coating lining the interior of its ABF II steel piping did not damage adjoining CPVC fire sprinkler pipes; and (2) a duty to warn against the dangers of joining its ABF II steel piping with CPVC fire sprinkler piping. Those duties rest upon the factual allegations that, at all relevant times:

(1)     Allied was a manufacturer of steel fire sprinkler products and a division of Tyco Electrical and Metal Products, which manufactured CPVC fire sprinkler piping. *See* SAFPC at ¶ 28.

(2)    Allied knew that installation contractors were connecting its ABF II coated steel piping to CPVC fire sprinkler piping in mixed steel-CPVC fire sprinkler systems, like the one in 414 Water Street.  *See id.* at ¶ 29.

(3)    Allied knew that, when in service in fire sprinkler systems, its ABF II coating washed off the interior of its ABF II coated steel pipes, flowed downstream and came in contact with the adjoining CPVC fire sprinkler piping.  *See id.* at ¶ 34.

(4)    Allied knew that CPVC fire sprinkler piping suffers ESC when exposed to incompatible chemicals.  *See id.* at ¶ 30.

(5)    ABF II contained chemicals that, at the time Allied began selling its ABF II coated steel pipes in 2004, were well known to cause ESC.  *See id.* at ¶ 31.

(6)    The chemical composition of ABF II was known only to Allied.  At the time Federal Fire purchased the fire sprinkler piping and installed the fire sprinkler system at 414 Water Street, neither Victaulic nor the Plaintiff's insured knew that Allied's ABF II caused environmental stress cracking of CPVC piping or contained chemicals that caused environmental stress cracking.  *See id.* at ¶ 35.

(7)    Neither the anti-microbial coating that Allied used before ABF II nor the anti-microbial coatings used by other steel pipe manufacturers contained chemicals that caused environmental stress cracking of CPVC piping.  *See id.* at ¶ 36.

(8)    It was reasonably foreseeable to Allied that its ABF II coating, containing known ESC agents, would cause ESC of CPVC pipes when the ABF II coating washed off the Allied steel pipes and came in contact with the adjoining CPVC pipes in mixed steel-CPVC fire sprinkler systems. *Se id.* at ¶¶ 34, 65, 84.

2.      *Plaintiff Breached its Duty of Care and Duty to Warn*

The SAFPC alleges that Allied breached the duty of care to Plaintiff (and Plaintiff's insured) by failing to ensure that the coating lining the interior of its steel piping was compatible with and did not cause environmental stress cracking of adjoining CPVC fire sprinkler piping.  The SAFPC alleges that Allied similarly breached its duty to warn (1) against installing ABF II coated steel piping in mixed steel-CPVC fire sprinkler systems due to the risk of ABF II causing environmental stress cracking of the CPVC; and (2) that its ABF II coating washes off its ABF II coated steel pipes and, if installed in mixed steel-CPVC fire sprinkler systems, could cause environmental stress cracking of the adjoining CPVC fire sprinkler systems.

In particular, the Second Amended Fourth Party Complaint alleges that:

(1)     Allied's ABF II coating contained chemicals that were well-known environmental stress cracking agents at the time Allied began selling its ABF II steel piping in 2004.  *See id.* at ¶¶ 31 & 56.

(2)     Allied failed to test the compatibility of its ABF II coating with CPVC fire sprinkler piping before introducing its ABF II steel piping to the marketplace. If Allied had conducted compatibility testing before it began selling ABF II coated steel piping, that testing would have shown that the ABF II coating is not compatible with and causes environmental stress cracking of CPVC piping. *See id.* at ¶¶ 36 & 56.

(3)     At no time did Allied disclose the chemical formulation of ABF II to the fire sprinkler industry.  *See id.* at ¶¶ 37 & 56.

(4)     In April 2007, Allied provided Lubrizol Corporation, a manufacturer of CPVC resin, with a list of the proprietary ingredients in ABF II.  After reviewing the list

of ABF II ingredients, Lubrizol immediately told Allied what it should have already known – that ABF II was "very incompatible with CPVC."  *Id.* at ¶¶ 38 & 56.

(5)    In April 2007, Lubrizol conducted testing on the compatibility of ABF II and CPVC pipes, and by May 3, 2007, concluded that ABF II was incompatible with and caused environmental stress cracking of CPVC.  *Id.* at ¶¶ 40 & 56.

(6)    Again Lubrizol immediately notified Allied that its testing showed ABF II to be incompatible with CPVC piping.  *Id.* at ¶¶ 41, 56.  Despite these test results, Allied continued to manufacture and sell ABF II coated steel piping for use in mixed steel-CPVC fire sprinkler systems.  *Id.* at ¶¶ 42 & 56.

(7)    Lubrizol conducted additional compatibility testing on ABF II and CPVC in August 2007.  That testing confirmed that ABF II was incompatible and caused environmental stress cracking of CPVC piping.  *Id.* at ¶¶ 43 & 56.

(8)    Lubrizol immediately notified Allied of this testing confirming that Allied's ABF II was incompatible with and caused environmental stress cracking of CPVC piping.  ***Allied again hid these test results from the public.***  *Id.* at ¶¶ 44- 45 & 56.

(9)    In or around 2011, Allied replaced its incompatible ABF II coating with a new antimicrobial coating, M Coat, which Allied has promoted as compatible with CPVC fire sprinkler pipe.  *See id.* at ¶ 48.

(10)    Allied's ABF II coating has caused CPVC fire sprinkler pipes installed in hybrid mixed steel-CPVC fire sprinkler systems in other buildings across the country to suffer environmental stress cracking and leaking.  *Id.* at ¶ 46.

(11)   Allied has been sued and continues to be sued by condo associations, building owners and insurers across the country for negligence and strict liability arising from damage its ABF II steel piping caused to CPVC piping.  *Id.* at ¶ 47.

Allied's motion to dismiss does not address these detailed allegations of negligence.  To the contrary, Allied's motion completely ignores them.  Allied's failure to address or even acknowledge these allegations highlights the dubiousness of Allied's motion.

3.      *Allied's Breach Proximately Caused Plaintiff's Damages.*

The SAFPC alleges that Allied's ABF II coated steel piping caused and/or contributed to the leak and Plaintiff's resulting damages.  In particular, it alleges that:

(1)   The leak at 414 Water Street occurred because an incompatible chemical attacked the CPVC pipe causing it to suffer environmental stress cracking.  *See id.* at ¶ 61.  In its Complaint, Plaintiff reiterates this allegations.  *See also* Exhibit A at ¶ 13.

(2)   The ABF II coating is a known environmental stress cracking agent present in the fire sprinkler system at 414 Water Street. *See* Exhibit B at ¶ 31. Given that the ABF II coating washes off the steel piping, the ABF II coating came in contact with the incident CPVC fire sprinkler pipe at issue in this lawsuit.  *Id.* at ¶ 34.

(3)   The fracture surface of the incident CPVC fire sprinkler pipe was darkened, which is consistent with the type of chemical reaction that takes place when ABF II causes environmental stress cracking.  *Id*. at ¶ 35.

(4)   While investigation is continuing, the information to date shows that the ABF II coating from the Allied ABF II steel piping connected to the CPVC piping caused the incident CPVC pipe to suffer environmental stress cracking and leak or, at a minimum, contributed to the ESC and leak.  *Id.* at ¶ 52.

4.     *Damages.*

Plaintiff has alleged that it incurred damages as a result of the leak in the CPVC fire sprinkler piping.  *See* Complaint at ¶¶ 20 & 25.

It is irrefutable that, if these factual allegations are proven true, Allied would be liable to Plaintiff on negligence grounds.  As a result, Victaulic has valid indemnity and contribution claims against Allied, and Allied's motion to dismiss must be denied.

**B.     The Second Amended Fourth Party Complaint Also Establishes
a Strict Liability Claim against Allied.**

Allied is also liable to Plaintiff (and its insured) under a theory of strict liability.  By marketing its product for use and consumption, an entity assumes a "special responsibility toward any member of the consuming public who may be injured by it…"  *Phipps v. General Motors Corp.,* 278 Md. 337, 352 (1976).  The public relies upon a promise that a seller of products will stand behind its products. *Id.*  A party injured by a defective and unreasonably dangerous product should not be expected to bear the loss of injury when the seller of the product is in a better position than the public to take precautions to protect the public from the defect. *Id.* at 352-53.   To recover under a theory of strict liability, a party must show:

(1)     [that] the product was in a defective condition at the time it left
        the possession or control of the seller,
(2)     that it was unreasonably dangerous to the user or consumer,
(3)     that the defect was the cause of the injuries, and
(4)     that the product was expected to and did reach the consumer
        without substantial change in its condition.

*Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420 (1992) (citing Section 402A of the Restatement (Second) of Torts).   A manufacturer may also be liable for failing to provide an adequate warning where it knows of its product's danger "or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ... danger." *Id.*

The SAFPC's allegations satisfy each of these requirements.  Specifically, it is alleged that Allied's ABF II pipe installed at 414 Water Street was defective in that the interior of the pipe was coated with the ABF II coating, which Allied knew contained chemicals that were incompatible with CPVC piping.  *See* Exhibit B at ¶¶ 28-46 & 56.  Allied also knew that its ABF II steel piping was installed in mixed steel-CPVC sprinkler systems, such as the one at 414 Water Street, and that the ABF II coating washed off the interior of the Allied steel piping and came in contact with adjoining CPVC piping.  *Id.* at ¶ 31.  In that environment, the ABF II coating attacks the CPVC piping causing it to suffer environmental stress cracking and leaking.  *Id.* at ¶ 46.  Independently, the SAFPC alleges that Allied knew or should have known of the dangers associated with ABF II in mixed steel-CPVC systems and failed to warn of those dangers.  *Id.* at ¶¶ 28-46 & 56.

Moreover, Allied had a feasible alternative to ABF II.  Allied easily could have manufactured an antimicrobial coating, such as ABF II, without chemicals that cause harm to CPVC piping.  Indeed, Allied's predecessor to ABF II, ABF I, did not cause environmental stress cracking in CPVC.  *Id.* at ¶ 32.  At the same time that Allied sold ABF II steel piping, other manufacturers of steel sprinkler piping coated their steel pipes with antimicrobial coatings that did not cause environmental stress cracking.  *Id.*  Allied eventually replaced ABF II with an antimicrobial coating that it promotes as compatible with CPVC piping.  *Id.* at ¶ 51.

This defect in the Allied ABF II steel piping existed at the time the coated piping left Allied's possession.  *Id.* at ¶ 56(l).  In that manufactured condition, Allied's ABF II piping was unreasonably dangerous to the user or consumer in the typical manner it was used.  *Id.* at ¶¶ 56(m) & 58.  As Allied knew, users or consumers of its ABF II steel piping often installed the piping in mixed steel-CPVC fire sprinkler systems and that the coating would wash off the steel piping.  *Id.* at ¶ 29 & 56(a).  It is unreasonably dangerous to sell a product for use in a mixed steel-CPVC fire

sprinkler system that will attack and damage the CPVC piping. *Id.* at ¶ 56(m). When a CPVC fire sprinkler piping leaks due to environmental stress cracking, it can lead to extensive property damage. *Id.* at ¶ 49.

As alleged, the defect in the Allied ABF II piping and Allied's failure to warn caused or contributed to the cracking of the Victaulic CPVC pipe and resulting leak and damages at issue in this action. *Id.* at ¶ 52.

Finally, the Allied ABF II pipe installed at 414 Water Street reached the user without substantial change in its condition. Federal Fire purchased the Allied ABF II piping and installed it in the fire sprinkler system without changing the ABF II coating in any way. *Id.* at ¶¶ 59-60.

If proven true, these allegations without question establish Allied's strict product liability to Plaintiff (and its insured). Plaintiff and Victaulic both relied upon a promise that Allied would stand behind its product. Neither Victaulic nor the Plaintiff should be expected to bear the costs associated with the injury when Allied was clearly in a better position to test its product and take other precautions to protect the public from any damage its product may cause. Victaulic could not foresee that when it sold its CPVC fire sprinkler pipe, its pipe would be connected to a steel pipe, which would chemically attack the Victaulic piping and cause it to crack.

### C.    *Allied's Efforts to Divert Focus Away from These Well Pled Allegations Lack Merit.*

Instead of addressing the allegations of its gross misconduct and liability to Plaintiff – which establish its liability to Victaulic for contribution and indemnity – Allied tries to misdirect the Court with three equally unavailing arguments. None support dismissal of the SAFPC.

#### 1.    *Discovery Is Necessary to Determine the Applicability of the Economic Loss Rule.*

Allied's request for dismissal based on the economic loss rule is premature and should be rejected. It is accepted that the economic loss rule "prohibits a plaintiff from recovering in tort

for purely economic losses — losses that involve neither a clear danger or physical injury or death, ***nor damage to property other than the product itself***." *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 738 A.2d 971, 1003 (2007) (emphasis added).

The *Pulte* case involved allegations and evidence that a Barrier EIFS system manufactured by Parex, Inc. was defective and allowed moisture to get behind the EIFS and damage the substrate to which it was attached. *Id.* at 1000. The Court ruled that the EIFS was integrated into the home, and that the "product" for purposes of the economic loss rule was the "completed home" delivered to the Plaintiff. *Id.* at 1005. In determining whether the economic loss rule barred the tort claims against the EIFS manufacturer, the Court analyzed whether the damaged substrate was part of that "completed home" or was "other property" added later. The Court ruled that the substrate to which the EIFS system was attached was part of the completed home and because discovery showed that the Plaintiff did not seek damages to other property that was not part of the completed home as delivered to the Plaintiff, the economic loss rule barred Plaintiff's claims at the summary judgment stage. If the Plaintiff had sought damages to other property – such as carpeting, hardwood flooring, cabinetry, etc. – that was added to the completed home after it was delivered to Plaintiff, the economic loss rule would not have barred Plaintiff's tort claims. *Id.* at 1005.

To prevail on its motion to dismiss based on the economic loss rule, Allied bears the burden of demonstrating that the damages Plaintiff seeks are part of the completed condominium building as delivered to the Plaintiff's insured. Allied cannot meet that burden based on the allegations in the pleadings.

The Complaint alleges generally that contaminants attacked a CPVC fire sprinkler pipe causing it to "release[] copious amounts of water which flooded the 23rd Floor along with

numerous sections of the Subject Premises below the 23rd Floor including stairwells, common areas and individual condominium units."  *See* Exhibit A at ¶¶ 12-13.  Plaintiff alleges that the leak "resulted in significant water damage to the Subject Premises."  *Id.* at ¶ 14.  The Complaint, however, does not identify the specific property that was damaged by the leak let alone provide information that would allow the Court to determine whether that property was part of the completed condominium building as delivered to the Plaintiff's insured.

Discovery is necessary for the Court to make that determination.  If all of the damaged property was part of the condominium building as delivered to Plaintiff's insured, then the economic loss rule would bar the tort claims ***against both Allied and Victaulic***.  If, on the other hand, some of the damage was to property – such as carpeting, hardwood floor, cabinetry, blinds, etc. – which was added to the building after it was delivered to the Plaintiff's insured or was to personal property of a tenant (*i.e.*, television, furniture, etc.), the economic loss rule would not apply.  The allegations in the pleadings do not answer this question one way or the other.  The appropriate time to make that determination, therefore, is at the summary judgment stage after discovery into the nature of Plaintiff's damages.

Accordingly, Allied's motion to dismiss must be denied.

2.       *Allied's Challenge to Victaulic's Indemnity Claim Is Devoid of Merit.*

Allied next contends that it cannot be liable for indemnity because Federal Fire's allegations against Victaulic in the Third Party Complaint do not expressly reference Allied's ABF II piping or wrongdoing by Allied, but instead are focused on alleged manufacturing defects.  *See* Allied's Motion at p. 7.  This argument mischaracterizes the standard for indemnity claims and ignores the allegations of the pleadings.

Under Maryland law, "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the

other for expenditures properly made in the discharge of such liability." *Pulte Home Corp.*, 942

A.2d at 731 (quoting Restatement of Restitution, § 96).  To state a claim for indemnity and

contribution, it must be alleged that Allied has original tort liability to the Plaintiff.  *See Heritage*

*Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md.App. 698, 810-11 (Md. Ct. App. 2002).

Federal Fire's allegations against Victaulic do not have to specifically reference Allied or

ABF II for Victaulic to be able to recover against Allied on a theory of indemnity.   Contrary to

Allied's suggestion, Federal Fire's third-party complaint against Victaulic are not limited to

allegations that Victaulic's CPVC piping was defectively manufactured.  Instead, Federal Fire

alleges that if it is liable to Plaintiff, "such liability was the result of and caused by the

negligence, acts, or omissions and/or other fault of Victaulic Company, ***including*** strict liability

based upon its provision of faulty and/or defective pipe to Federal Fire . . ."  *See* Exhibit D at ¶

26 (emphasis added).  The use of the word "including" makes clear that the allegations of

"defective" pipe are only one possible part of a broad allegation of liability against Victaulic.

Moreover, the Third Party Complaint specifically attaches and incorporates the

Complaint as an exhibit.  *See* Exhibit C at ¶ 5.  Plaintiff's Complaint alleges that the CPVC pipe

was attacked by "contaminants . . . introduced at the time of the fire sprinkler system's

installation [which] caused the deterioration and ultimate failure of the CPVC pipe."  *See* Exhibit

A at ¶ 13.  Victaulic alleges that it bears no active negligence to Plaintiff or Federal Fire and

agrees with Plaintiff that the Victaulic CPVC pipe leaked because it was attacked by a

contaminant or incompatible chemical.  *See* Exhibit B at ¶ 27.  Victaulic alleges that: (1) Allied

steel pipe coated with ABF II coating is connected to the CPVC fire sprinkler piping in the

building, (2) the ABF II coating is incompatible with CPVC and can cause the type of

environmental stress cracking that Plaintiff alleges occurred; (3) Allied knew, but failed to warn,

that its ABF II pipe was used in mixed steel-CPVC fire sprinkler systems, that the ABF II

coating washed off and came in contact with adjoining CPVC and cause ESC; and (4) the

features on the CPVC pipe are consistent with environmental stress cracking caused by ABF II.

*See* Exhibit B at ¶¶ 28-47; *see also* Exhibits A and C.

If true, those allegations demonstrate that Allied would be liable to Plaintiff and Federal

Fire for the damages caused by the leak and Victaulic would have an equitable indemnity claim

against Allied.  Victaulic is not responsible for the chemical attack and is entitled to seek

indemnity from Allied for the damages it caused.

.       *3.       Allied's Attempt to Dramatically Narrow Its Liability for ABF II
                 Is Completely Unfounded.*

Finally, Allied contends that it cannot be liable to Plaintiff in negligence or strict liability

for damage that its ABF II coating causes to adjoining piping in a mixed steel-CPVC fire

sprinkler system.  Allied cites no authority for this proposition – because there is none.

Maryland law, like most states, recognize that a manufacturer is liable for all foreseeable

harm that result from its negligence and/or defects (including failure to warn) in its product.

*Eagle-Picher Indus. v. Balbos*, 604 A.2d 445 (Md. Ct. App. 1992).  The SAFPC expressly

alleges that Allied knew that its ABF II coated steel piping was being installed in mixed steel-

CPVC fire sprinkler systems, knew that its ABF II coating washed off its steel piping and flowed

downstream where it came in contact with adjoining CPVC fire sprinkler piping, knew that its

ABF II coating contained chemicals that were harmful to CPVC, before April 2007, knew or

should have known that ABF II caused ESC of CPVC, and beginning at least as early as April

2007, had actual knowledge that ABF II caused ESC in CPVC piping.  *See id.* at ¶¶ 30-34 & 56.

These allegations establish that it was foreseeable to Allied that its ABF II could wash off Allied

steel piping, come in contact with the adjoining CPVC piping in mixed steel-CPVC fire sprinkler systems and cause the CPVC pipe to suffer ESC.

As explained in detail above, Allied's failure to ensure that its ABF II coating was compatible with CPVC fire sprinkler piping – which had been in use for years before ABF II hit the market – and failure to warn about the harmful effects of ABF II establish Allied's negligence and strict liability to Plaintiff and, thus Allied's liability to Victaulic for contribution and indemnity.

### V.     CONCLUSION

For the foregoing reasons, Victaulic respectfully requests that the Court deny Allied's motion to dismiss Victaulic's Amended Fourth Party Complaint.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

Date:  July 9, 2020                 ___/s/ Daniel J. O'Hara_____
Daniel J. O'Hara, Bar No. 28928
600 Baltimore Avenue, Suite 305
Towson, MD 21204
(410) 339-6880

Gregory J. Wartman, Esquire
Law Office of Gregory J. Wartman
3155 Burn Brae Dr.
Dresher, PA 19025
(267) 265-7648
gregoryjwartman@gmail.com
*(Admitted pro hac vice)*

*Attorneys for Third-Party Defendant and Fourth-Party Plaintiff Victaulic Co.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 9th day of July, a copy of Third-Party Defendant/Fourth-Party Plaintiff Victaulic Company's Brief in Opposition to Fourth-Party Defendant Allied Tube and Conduit Corporation's Motion to Dismiss Second Amended Fourth-Party Complaint and this Certificate of Service was electronically transmitted to all parties of record.


*/s/ Daniel J. O'Hara*
Daniel J. O'Hara